UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLOBAL NAPs ILLINOIS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 09-cv-3113 |
| ILLINOIS COMMERCE COMMISSION, | ) |
| | ) Judge John W. Darrah |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ILLINOIS BELL TELEPHONE CO., | ) |
| | ) |
| Intervenor-Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Global NAPs Illinois, Inc. ("Global") filed a seventeen-count "Complaint and Petition for Review," challenging a ruling of the Illinois Commerce Commission ("ICC") and naming the ICC as the sole defendant. Counts 1 through 11 claim violations of federal law, Count 12 claims a violation of Global's Constitutional right to due process, and Counts 13 through 17 are based on the laws of the State of Illinois.

The Court granted Illinois Bell Telephone Company ("AT&T Illinois" or "AT&T") leave to intervene; and AT&T promptly moved to dismiss Global's Petition for failure to state a claim. For the reasons discussed below, AT&T's Motion is denied in part and granted in part.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Global's Complaint and are accepted as true for purposes of resolving AT&T's Motion to Dismiss. Global, a Delaware Corporation, is certified to provide telecommunications-related services in Illinois. (Compl. ¶ 1.) Its principal place of business is in Massachusetts. (Compl. ¶ 1.) AT&T Illinois also provides telecommunications-related services in Illinois. (Compl. ¶ 3.) Global and AT&T Illinois are parties to an Interconnection Agreement (the "ICA") that was negotiated pursuant to the Telecommunications Act of 1996 ("Telecom Act") and approved by the ICC on July 23, 2003. (Compl. ¶ 4.)

Until the 1990s, local phone service was monopolistic and regulated by states. The Telecom Act now requires incumbent local exchange carriers (such as AT&T Illinois) to negotiate agreements with other telecommunications carriers, allowing those carriers to connect to the incumbent's network.[1] All local exchange carriers have a duty "to establish reciprocal compensation arrangements for the transport and termination of telecommunications," 47 U.S.C. § 251(b)(5), and to negotiate in good faith particular terms and conditions of agreements to fulfill that duty, 47 U.S.C. § 251(c)(1). Incumbent local exchange carriers have additional duties. Among those duties is a duty to provide interconnection with a requesting local exchange carrier's network for transmitting and routing telephone exchange service, as well as access at any technically feasible point

---

[1] "Incumbent local exchange carriers" are carriers that were providing local phone service when the Telecom Act was passed. They are comprised mostly of the "Regional Bell Operating Companies" or "Baby Bells" that were created as a result of a consent decree settling the United States' antitrust suit against AT&T in the early 1980s. AT&T Illinois (formerly Ameritech) is an incumbent local exchange carrier.

2

within the carrier's network, on rates, terms, and conditions that are just, reasonable, and nondiscriminatory in accordance with the terms and conditions of the agreement and §§ 251 and 252. 47 U.S.C. § 251(c).

Section 252 governs the negotiation, arbitration and approval of interconnection agreements. Upon receiving a request for interconnection under § 251, an incumbent local exchange carrier "may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251." 47 U.S.C. § 252(a)(1). The agreement must include "a detailed schedule of itemized charges for interconnection and each service or network element included in the agreement." *Id.* If the parties are unable to negotiate a complete agreement, the parties may submit the disputed issues to the relevant state commission – the ICC, in this case – for arbitration. 47 U.S.C. § 252(b). The state commission must then resolve the arbitration pursuant to certain standards set forth in § 252. 47 U.S.C. § 252(b). Whether adopted by negotiation or arbitration, an interconnection agreement must ultimately be submitted to the state commission for approval. 47 U.S.C. § 252(e)(1). A party aggrieved by any determination made by a state commission under § 252 may bring an action in a federal district court to determine whether the agreement or statement meets the requirements of §§ 251 and 252. 47 U.S.C. § 252(e)(6). This includes the right to challenge orders issued by state agencies implementing the Telecom Act. *Ill. Bell Tel. Co. v. Worldcom Technologies, Inc.*, 179 F.3d 566, 570-71 (7th Cir. 1999) (*Worldcom*).

When Global entered the Illinois market in 2001 and began negotiating with AT&T Illinois for an interconnection agreement, Global had only one business: it enabled dial-up internet access offered by third parties to end users. (Compl. ¶ 13.) Global interconnected with local telephone companies such as AT&T Illinois in order to transmit calls from local subscribers to internet service providers ("ISPs"). (Compl. ¶ 13.) Global signed the ICA for the purpose of expanding its dial-up internet-access business. (Compl. ¶ 13.) After entering into the ICA with AT&T Illinois, Global altered its business model and began contracting with voice-over-internet-protocol ("VoIP") aggregators to receive their traffic and forward it to AT&T Illinois and other Illinois local exchange carriers for termination to end users.[2] (Compl. ¶ 13.) In other words, Global was delivering traffic in the reverse form of what was contemplated in the ICA. (Compl. ¶ 13.) Although the existing ICA did not specifically cover pricing for VoIP traffic – which was never specifically discussed during negotiation of the ICA – Global used the ICA to deliver VoIP traffic to AT&T Illinois. (Compl. ¶ 13.)

Global never paid AT&T any money under the ICA. In 2006, AT&T Illinois filed a complaint with this Court, seeking recovery for (1) charges for high-capacity "DS3" facilities connecting AT&T's and Global's networks; (2) transiting charges for traffic

---

[2] VoIP is an internet application used to transmit a voice communication over a broadband internet connection. (Compl. ¶ 14.) Unlike traditional public switched telephone networks, VoIP communications generally can originate and terminate from any place with a broadband internet connection, including locations not necessarily affiliated with the geographic location associated with the VoIP subscriber's telephone number. (Compl. ¶ 15.) Such services are referred to as "nomadic VoIP" services. (Compl. ¶ 15.)

4

transited by AT&T Illinois; and (3) terminating access charges.[3] AT&T asserted that all charges were due under the ICA.

On December 17, 2007, this Court dismissed a number of AT&T's claims, holding that those claims first should be heard by the ICC. *See* Case No. 06-cv-3431, Docket No. 183. AT&T then filed an ICC complaint, raising the same issues. On February 11, 2009, the ICC found that Global owed AT&T more than $1.5 million in fees under the ICA. (Compl. ¶ 5.) The ICC specifically found: (1) that Global was not exempt from paying AT&T Illinois based on any claimed VoIP exemptions; (2) that Global had not established that all of the traffic at issue was VoIP traffic; and (3) that Global had voluntarily agreed to the assessment of traditional access charges, reciprocal compensation charges, and transiting charges on its VoIP traffic by virtue of the ICA applicable to traditional telecommunications services. (Compl. ¶ 19.) The ICC also determined that the ICA contemplated that Global would be financially responsible for the DS3 circuits connecting AT&T's La Grange tandem office to Global's Oak Brook facility. (Compl. ¶ 33.)

On March 11, 2009, the ICC denied Global's motion for a stay of the February 11 Order. (Compl. ¶ 6.) Global then sought to submit additional evidence showing that AT&T's proposed charges were unjust, unreasonable, and discriminatory and also sought to reopen the record to allow Global to submit additional evidence to show precisely what percentage of Global's traffic was VoIP traffic. (Compl. ¶ 19.) On March 25, 2009, the

---

[3] Generally, "transiting" refers to AT&T's transportation of Global's traffic across AT&T's network to third-party carriers; "termination" refers to AT&T's delivery of Global's traffic to customers in AT&T's own network.

5

ICC denied Global's application for rehearing of the February 11 Order and for rehearing to allow submission of additional evidence.[4] (Compl. ¶ 19.)

At all times, Global provided IP-enabled services, including VoIP interconnection services, to its customers. (Compl. ¶ 16.) All of Global's customers are VoIP aggregators and enhanced service providers ("ESPs"). (Compl. ¶ 16.) Global does not provide originating dial-tone service to end users; instead, Global carries originating traffic that is ISP-bound and terminating VoIP traffic (i.e., IP-enabled traffic) to AT&T Illinois. (Compl. ¶ 16.) Nomadic VoIP calls carried by Global do not necessarily originate and terminate in the same local calling area, since they are transmitted out of Illinois to aggregators and Global. (Compl. ¶ 16.) Thus, Global believes they are not traditional local or intraLATA (Local Access and Transport Area) calls and, thus, not subject to the ICA terms specifically applicable to local and intraLATA calls. (Compl. ¶ 16.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The allegations in the complaint "must

---

[4] Global filed its Complaint in this action on May 22, 2009.

plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The district court need not accept as true "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)). Although affirmative defenses are not usually resolved on a motion to dismiss, dismissal under Rule 12(b)(6) is proper if the plaintiff's complaint, on its face, demonstrates that a claim is barred by a statute of limitations. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

## ANALYSIS

Global seeks a declaratory judgment that the ICC incorrectly interpreted the ICA in a manner inconsistent with federal law and that its refusal to reopen the proceedings to accept additional evidence violated due process. (Compl. ¶ 11.) Global also argues that the ICC's orders violate the Illinois Public Utilities Act ("PUA"). (Compl. ¶¶ 28-30.) AT&T Illinois moves to dismiss each of Global's seventeen counts.

### *Counts 1 Through 5*

Counts 1 through 5 each allege that the ICC's interpretation of the ICA was in contravention of the Telecom Act and various Federal Commerce Commission ("FCC") decisions. Count 1 concerns charges AT&T billed Global for high-capacity facilities, called "DS3s," that connect Global's and AT&T's networks. The ICC interpreted the

7

ICA as specifically designating AT&T's La Grange facility as the point of interconnection, which is significant because each party is responsible for the cost of facilities on its own side of that location. And Global asserts that the ICC's decision ignored Global's right under the Telecom Act to designate its Oak Brook location as the point of interconnection between the two parties' networks.

Counts 2 through 5 each allege that the ICC's orders involuntarily imposed certain charges on Global in violation of federal law, including § 251. Count 2 addresses traditional access charges on VoIP or other enhanced traffic. Count 3 addresses transiting charges on VoIP or other enhanced traffic. Count 4 addresses reciprocal compensation charges on VoIP or other enhanced traffic. And Count 5 addresses traditional access charges on a wholesale provider of VoIP interconnection services.

According to AT&T Illinois, because the ICC interpreted the ICA as an agreement by Global to pay the disputed charges, this matter is a simple contract dispute that does not invoke any federal cause of action. AT&T Illinois relies primarily on *Worldcom*, in which the Seventh Circuit stated, "Section 252(e)(6) authorizes a federal court to determine whether the agency's decision departs from federal law. A decision 'interpreting' an agreement contrary to its terms creates a different kind of problem – one under the law of contracts, and therefore one for which a state forum can supply a remedy." 179 F.3d at 574.

*Worldcom* was an appeal from a district court decision upholding an ICC order against an incumbent local exchange carrier. *Id.* at 569. The Seventh Circuit found that it had jurisdiction to review the actions of the ICC but stated that the scope of review was

limited to deciding whether the ICC's decision violated federal law and specifically stated that it would not review ICC actions for compliance with state law. *Id.* at 571. Similar to the arguments in this case, the arguments raised by the appellant in *Worldcom* asserted that the ICC's interpretation of an interconnection agreement violated federal law as interpreted through decisions issued by the FCC. *Id.* at 573-74. The *Worldcom* court did not dismiss all questions of interpretation as a mere contract dispute; rather, it specifically discussed the ICC's consideration of several factors before holding that the decision did not violate federal law. *Id.* at 574. The court then stated that any remaining state-law issues were open for determination in the proper forum. Therefore, *Worldcom* does not support dismissing a petition for review merely because it alleges that the ICC incorrectly interpreted an interconnection agreement.

AT&T Illinois also argues that a decision in a related case supports dismissing Global's federal claims at this early stage in the litigation. In *Illinois Bell Telephone Co. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 591 (7th Cir. 2008), the Seventh Circuit, citing the above-quoted language from *Worldcom*, stated that when a party sues merely to collect a charge specified in an approved interconnection agreement, the suit is not based on federal law. Here, the subject claims (Counts 1 through 5) are not brought to enforce an agreement but to challenge whether that agreement was properly construed in light of controlling federal law. Indeed, the Seventh Circuit specifically noted that a case in which a party sues a state commission to block an order requiring it to pay compensation under an interconnection agreement presents an entirely different situation. *Id.* at 592

9

(citing *Verizon Md., Inc. v. Global NAPs, Inc.*, 377 F.3d 355, 364-65 (4th Cir. 2004) (*Verizon*)).

Like the appellant in *Verizon*, Global alleges that the ICC interpreted an agreement in a manner inconsistent with federal law. Resolution of each of Counts 1 through 5 will require review of the record before the ICC. It would be improper to dismiss those claims now.[5] Therefore, AT&T's Motion to Dismiss is denied as to Counts 1 through 5.

## Counts 7 Through 11

In Counts 7 through 10, Global argues that the evidence was insufficient to support the ICC's various findings and that those findings contravened federal law. In Count 11, Global alleges that the ICC's interpretation of the ICA was arbitrary and capricious. AT&T contends that because the ICC interpreted the ICA as an agreement by Global to pay the disputed charges, this matter is a simple contract dispute for which federal review is foreclosed by *Worldcom*. Again, AT&T is asking the Court to make a determination that should not be reached without some review of the ICC record. Although deference is given to the ICC's factual findings, they are still subject to review under an arbitrary-and-capricious standard. *Ind. Bell Tel. Co., Inc. v. McCarty*, 362 F.3d

---

[5] AT&T also asserts that Global waived a number of its claims (Counts 1 through 5 and 12) by not raising them in the ICC proceedings. But neither of the cases cited by AT&T found waiver in the context of a motion to dismiss. Indeed, in one of those cases, *Toledo, Peoria & Western Railway v. Surface Transportation Board*, 462 F.3d 734, 736, 744 n.16 (7th Cir. 2006), the Seventh Circuit determined that a particular argument was waived only after "extensive litigation" and "careful review of the record." Here, AT&T asks this Court to make the same determination without *any* review of the record. AT&T's waiver argument is premature.

10

378, 385 (7th Cir. 2004) (citing *Sw. Bell Tel. Co. v. Apple*, 309 F.3d 713, 717-18 (10th Cir. 2002); and *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1052 (9th Cir. 2000)).

Construing all allegations in Global's favor, Counts 7 through 11 state cognizable claims for relief. AT&T's Motion to Dismiss is denied as to Counts 7 through 11.

*Counts 6 and 12*

In Counts 6 and 12, Global claims that the ICC violated federal law and due process when the ICC refused to reopen the record to allow Global to present evidence of other carriers' interconnection agreements. Global contends that those agreements subject VoIP traffic "only to charges that had been negotiated between the parties," which demonstrates "unjust and unreasonable discrimination" against Global. (Compl. ¶¶ 53-54, 70-71.) Global also contends the ICC was aware of this "crucial proof" but refused to reopen the record to allow Global to submit it. (Compl. ¶ 71.)

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Here, AT&T asks the Court to disregard Global's allegations and hold that the ICC's decision not to reopen the proceedings could not, as a matter of law, violate due process or the ICC's obligation to prevent discrimination under the Telecom Act. Again, AT&T's argument is premature. In ruling on AT&T's Motion to Dismiss, all allegations must be construed in Global's favor. The Court cannot simply accept AT&T's argument that Global "had a full and fair opportunity to present evidence and argument prior to the ICC's final decision" (AT&T

11

Mem. in Supp. of Mot. to Dismiss 11) without actually reviewing the record. AT&T's Motion to Dismiss is denied as to Counts 6 and 12.

*Counts 13 Through 17*

In Counts 13-17, Global asserts that the ICC's orders violate the PUA. Counts 13 through 16 allege that the following ICC findings are not supported by substantial evidence and are contrary to the great weight of the evidence: that Global agreed to pay traditional access charges (Count 13), transiting charges (Count 14), and reciprocal compensation charges (Count 15) and that Global is not a VoIP carrier (Count 16). Count 17 alleges that the ICC violated the PUA by refusing to reopen the record to receive additional evidence that AT&T's rates were discriminatory. Each of these claims is time barred.

The PUA provides that a party affected by an order or decision from the ICC may file an appeal in the appropriate state court of appeals within 35 days from the date that a copy of the relevant order or decision was served on that party. 220 ILCS 5/10-201(a). Among other things, the reviewing court is authorized to determine whether the ICC failed to receive properly proffered evidence or whether the ICC's findings are not supported by substantial evidence. 220 ILCS 5/10-201(e).

But the statute clearly provides that failure to take an appeal under the PUA waives the right to have the merits of the controversy reviewed by *any* court:

> When no appeal is taken from a rule, regulation, order or decision of the Commission, as herein provided, parties affected by such rule, regulation, order or decision, shall be deemed to have waived the right to have the merits of the controversy reviewed by a court and there shall be no trial of the merits of any controversy in which such rule, regulation, order or

12

decision was made, by any court to which application may be made for the
enforcement of the same, or in any other judicial proceedings.

220 ILCS 5/10-201(f).

The ICC issued an order on February 11, 2009, and denied Global's application for rehearing on March 25, 2009. Notice of that denial was served on March 26, 2009. (*See* Ex. E to Compl.) The 35-day deadline imposed by the PUA was, thus, April 30, 2009. Global did not file any appeal in the Illinois Appellate Court and did not file its Complaint in this action until May 22, 2009.

Courts do not have jurisdiction to entertain time-barred claims. *See, e.g., Hoffman v. Ill. Commerce Comm'n*, 379 N.E.2d 42, 43-44 (Ill. App. Ct. 1978) (dismissing claim for review of ICC decision filed one day late, because "the notice [of appeal] requirement for appeals from ICC orders traditionally have [sic] been strictly construed"). Here, Global cannot dispute that its PUA claims were not filed within the 35-day period specified in the PUA. Instead, Global argues that the PUA statute of limitations does not apply to claims brought in federal court.

Global cites *Hanna v. Plumer*, 380 U.S. 460 (1965), for the proposition that "federal procedural rules customarily trump state law." That is true, but statutes of limitations are generally considered to be matters of substantive – not procedural – law. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (*Guaranty Trust*) (holding statutory limitation "that would completely bar recovery in a suit if brought in a State court bears on a State created right vitally and not merely formally or negligibly"); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002) ("It is further beyond dispute that, as a general rule, statutes of limitation are considered to be substantive

13

matters for purposes of the Erie doctrine."); *cf. Almanza v. Town of Cicero*, 244 F. Supp. 2d 913, 914-15 (N.D. Ill. 2003) (holding claim for administrative review of a city-ordinance violation to be time barred because 35-day appeal deadline is "a substantive restriction" imposed by Illinois law).

The *Guaranty Trust* Court held that a statute of limitations that would bar a state-law claim in state court should operate to bar that same claim brought in federal court under the court's diversity jurisdiction. 326 U.S. at 110. Here, Global asks the Court to exercise supplemental jurisdiction over its PUA claims.[6] (Compl. ¶ 10.) The holding set forth in *Guaranty Trust* requires the same result for state-law claims presented in federal court on purported supplemental jurisdiction. *Cf. id.* at 109 ("[F]or the same transaction the accident of a suit by a non-resident litigant in federal court instead of in a State court a block away, should not lead to a substantively different result.")

Global also contends that *Farzana K. v. Indiana Department of Education*, 473 F.3d 703 (7th Cir. 2007) (*Farzana K.*), compels a different result. It does not. In *Farzana K.*, the Seventh Circuit was presented with an appeal from a motion to dismiss for want of subject-matter jurisdiction. *Id.* at 704. The plaintiff's action in the district court was brought under the Individuals with Disabilities Education Act ("IDEA") after receiving an unfavorable final administrative decision. *Id.* Indiana provided a 30-day period during which a party could seek judicial review of the administrative decision. *Id.*

---

[6] In its Complaint, Global also alleges the Court has diversity jurisdiction over Global's dispute with the ICC. But the Complaint was filed before AT&T intervened, and Global has not alleged that diversity exists between Global and AT&T Illinois. In any event, the existence of diversity between the parties would not change the analysis. What matters is that Global does not allege federal-question jurisdiction over its PUA claims.

Defendant argued that the plaintiff missed the deadline and that the court lacked jurisdiction to hear the case. *Id.* Although it assumed that Indiana treated a delay as a jurisdictional failure, the court held that it had separate jurisdiction under 28 U.S.C. § 1331, which authorizes federal courts to entertain claims brought under federal law. *Id.* at 705. Because the plaintiff's claims were brought under the IDEA, timely filing under the Indiana statute was not a federal jurisdictional requirement. *Id.*

Global argues the same logic should apply here and that the four-year, catch-all statute of limitations in 28 U.S.C. § 1658 should trump the 35-day limitation provided by the PUA. But AT&T Illinois does not contend that the time for filing an appeal pursuant to 220 ILCS 5/10-201(a) operates as a bar to the federal claims Global purports to bring under the Telecom Act, only that it substantively bars the claims specifically brought under the PUA.

Global also cites an Eighth Circuit case as purportedly holding that a federal-court challenge is the exclusive way to appeal from a state ruling interpreting an interconnection agreement. (*See* Opp'n Br. 20 (citing *Iowa Utilities Bd. v. FCC*, 120 F.3d 753, 804 n.24 (8th Cir. 1997), *aff'd in part, rev'd in part*, 525 U.S. 366 (1999) (*Iowa Utilities*)).) But contrary to Global's assertion, that case did not address an appeal from a state ICA interpretive ruling; it merely stated, in dicta, "We believe that the enforcement decisions of state commissions would also be subject to federal district court review under subsection 252(e)(6)." *Id.* Moreover, the language in *Iowa Utilities* in no way indicates that jurisdictional statutes of limitations on claims brought under state

15

statutes can be disregarded anytime those claims are piggybacked onto claims brought under federal law.

Section 252(e)(6) provides jurisdiction for this Court to hear Global's claims that the ICC orders did not comply with the Telecom Act. It does not provide federal-question jurisdiction over Global's state PUA claims. Because those claims are time barred under the PUA, the Court has no authority to exercise supplemental jurisdiction over them. Counts 13 through 17 are dismissed.

## CONCLUSION

Construing all factual allegations in Global's favor, Global's Complaint states claims for relief under federal law sufficient to survive a motion to dismiss, and AT&T's Motion to Dismiss is denied as to Counts 1 through 12. Counts 13 through 17, however, are time barred under the PUA and are, therefore, dismissed.

Date: February 18, 2010

JOHN W. DARRAH
United States District Court Judge